Jordon Harlan, Esq. (CA #273978)
**HARLAN LAW, P.C.**
122 43rd Street
Manhattan Beach, CA 90266
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
Anna Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com
         arick@johnsonbecker.com

*Attorneys for Plaintiff Elham Motevalian*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **ELHAM MOTEVALIAN, an individual,**<br><br>                    **Plaintiff,**<br><br>v.<br><br>**SHARKNINJA OPERATING LLC, a Massachusetts Limited Liability Company,**<br><br>                    **Defendant.** | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.  Strict Products Liability<br><br>2.  Negligent Products Liability<br><br>3.  Breach of Implied Warranty of Merchantability<br><br>4.  Breach of Implied Warranty of Fitness for a Particular Purpose |

Plaintiff, **ELHAM MOTEVALIAN** (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **HARLAN LAW, P.C.**, hereby submits the following Complaint and Demand for Jury Trial against Defendant **SHARKNINJA OPERATING, LLC** (hereafter referred to as "Defendant SharkNinja" or "Defendant") and upon information and belief, at all times hereinafter mentioned, alleges as follows:

## NATURE OF THE CASE

1. Defendant designs, manufactures, markets, imports, distributes and sells consumer products such as vacuums, coffee machines, pressure cookers, blenders, and food processors, including the subject "Ninja Express Chop" food processor which specifically includes the NJ100GR model (referred to hereafter as "Express Chop" or "subject food processor") that is at issue in this case.

2. On or about August 22, 2022, Plaintiff suffered serious and substantial laceration injuries as the direct and proximate result of the Express Chop's blade system unexpectedly and unintentionally activating prior to complete assembly of the subject food processor and while Plaintiff the blades remained unsecured and exposed.

3. The subject food processors are defectively designed and manufactured in a manner that puts the user at risk of sustaining severe lacerations and injuries requiring medical attention during the normal, intended use of the food processors.

4. Defendant knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its Express Chop food processors to consumers and failing to recall the dangerously defective Express Chops regardless of the risk of significant injuries to Plaintiff and consumers like her.

5. As a direct and proximate result of Defendant's conduct, the

Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF ELHAM MOTEVALIAN

6. Plaintiff is a resident and citizen of the City of Irvine, County of Orange, State of California, and was born on May 2, 1982.

7. On or about August 22, 2022, Plaintiff suffered serious and substantial laceration injuries as the direct and proximate result of the Express Chop's blade system unexpectedly and unintentionally activating prior to complete assembly of the subject food processor while the blades remained unsecured and exposed. The incident occurred as the result of the Express Chops' defect(s), included its use of an unsecured blade assembly, its lack of an "on/off" switch, its oversized "pulse" button, and its lack of safety features, amongst others.

## DEFENDANT SHARKNINJA OPERATING, LLC

8. Defendant SharkNinja designs, manufacturers, markets, imports, distributes and sells a variety of consumer products, including the subject Express Chop food processor.

9. Defendant SharkNinja Operating, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the State of Massachusetts, County of Norfolk. Its sole member is EP Midco, LLC.

10. EP Midco, LLC, is a limited liability company created and organized under the laws of the State of Delaware with its principal place of business in the State of Massachusetts. Its sole member is Global Appliance UK Holdco Ltd.

11. Global Appliance UK Holdco Ltd. is a foreign corporation organized under the laws of the United Kingdom, with its principal place of business located in England.

12. Accordingly, Defendant SharkNinja is a resident and citizen of the

**COMPLAINT AND DEMAND FOR JURY TRIAL**

United Kingdom and England for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION & VENUE

13.   This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

14.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this District.

15.   Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of California and intentionally availed itself of the markets within California through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

16.   Defendant SharkNinja is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the food processors at issue in this litigation.

17.   Ninja Express Chop food processors, including the Express Chop that injured the Plaintiff, essentially have four main components: a processing bowl; an unsecured "Ninja Chopping Blade Assembly"; a splashguard/storage lid; and a power pod which energizes the unit.

18.   To assemble the unit, the user first places the loose blade assembly on a spindle pin located at the bottom of the processing bowl. After the user has placed their ingredients into the processing bowl, the splashguard/storage lid is placed on the processing bowl, with the "flap" on the lid in the open position. Finally, the power pod is placed on top of the splashguard:

**COMPLAINT AND DEMAND FOR JURY TRIAL**



*See* Ninja NJ100 Series Owner's Guide, pg. 4.[1]

19.   To operate the food processor, the user simply presses down on the large "on/off pulse button," which makes up most of the power pod:



*See* Ninja NJ100 Series Owner's Guide, pg. 5

20.   The Ninja Express Chop food processors contain a number of defects which render them unreasonably dangerous when used in a normal and foreseeable manner.

21.   At the outset, the Ninja Express Chop's use of a loose, unsecured blade assembly not only allows for the blade to easily slip out of the processing bowl, but allows for the unit to be put together backwards – specifically, by inserting the top of the blade assembly into the power pod first before placing it on top of the spindle in the processing bowl – something SharkNinja themselves

---

[1] A copy of the Ninja NJ100 Series Owner's Guide is attached hereto as Exhibit A, and is incorporated by reference.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

admits is possible to do in the Owner's Guide. This "backwards" assembly leaves the user exposed to the sharp blades and increases the risk that the user will inadvertently start the processor while trying to assemble or re-assemble the device.

22.    The Ninja Express Chops also lack a true "on/off" button or switch. Once the processor is plugged in, depressing the "On/Off Pulse Button" will start up the processor regardless of whether or not the processor is correctly assembled, or completely assembled at all. The Ninja Express Chop does not possess any other safety features that prevent the blade from running while partially assembled. If the Ninja Express Chop had simply had a true on/off switch this incident would have been completely avoided.

23.    Additionally, the Ninja Express Chop's "On/Off Pulse Button" takes up nearly the entire "Power Pod," making it near impossible for the user to hold the Power Pod without coming into contact with the pulse button and increasing the risk that a consumer will accidentally depress the pulse button and active the blades while holding, using, or assembling/disassembling the processor. Again, a smaller pulse button, or the inclusion of an on/off switch (or, ideally, both) would have completely prevented this needless incident from occurring.

24.    Plaintiff's use of the Ninja Express Chop was foreseeable, reasonable, and expected by Defendant SharkNinja. However, the subject food processors have been designed and manufactured in such a way that consumers cannot safely use them in the intended manner without risk of physical injury.

25.    By reason of the foregoing acts or omissions, the above-named Plaintiff purchased the subject food processor with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of chopping and dicing foods.

26.    Plaintiff used her Ninja Express Chop for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by Defendant.

27.    However, the aforementioned Ninja Express Chop was defectively designed and manufactured by Defendants in such a manner that it puts consumers, such as Plaintiff, at risk of lacerations and other physical injuries while simply assembling or disassembling the unit.

28.    Defendant's Ninja Express Chops possess defects that make them unreasonably dangerous for their intended use by consumers because, among other things, they utilize an unsecured blade assembly, lack an "on/off" switch, possess an oversized "pulse" button, and lack sufficient safety features.

29.    Economic, safer alternative designs were available that could have prevented Plaintiff's injuries.

30.    As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous food processor, which resulted in significant and painful bodily injuries.

31.    Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's Ninja Express Chop as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## FIRST CAUSE OF ACTION

## <u>STRICT PRODUCTS LIABILITY</u>

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGAINST SHARKNINJA OPERATING, LLC., ALLEGES AS FOLLOWS:

32.    Plaintiff incorporates by reference each preceding and succeeding

**COMPLAINT AND DEMAND FOR JURY TRIAL**

paragraph as though set forth fully at length herein.

33. At the time of Plaintiff's injuries, Defendant's Ninja Express Chops were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

34. Defendant's Ninja Express Chop food processors were in the same or substantially similar condition as when they left the possession of Defendant.

35. Plaintiff did not misuse or materially alter the Ninja Express Chop.

36. The Ninja Express Chop food processors did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

37. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Ninja Express Chop food processors safe. Specifically:

a. The Ninja Express Chop food processors designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential laceration injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the subject food processors, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendant failed to adequately test the subject food processors; and

e. Defendant failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries

**COMPLAINT AND DEMAND FOR JURY TRIAL**

and damages.

38. Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## SECOND CAUSE OF ACTION
## NEGLIGENT PRODUCTS LIABILITY

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGAINST SHARKNINJA OPERATING, LLC., ALLEGES AS FOLLOWS:

39. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

40. Defendant has a duty of reasonable care to design, manufacture, market, and sell non-defective Ninja Express Chop food processors that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

41. Defendant failed to exercise ordinary care in the manufacture, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its Ninja Express Chop food processors in that Defendant knew or should have known that said food processors created a high risk of unreasonable harm to the Plaintiff and consumers alike.

42. Defendant was negligent in the design, manufacture, advertising, marketing, and sale of its Ninja Express Chops in that, among other things, it:

    a. Failed to use due care in designing and manufacturing the Ninja Express Chop food processors to avoid the aforementioned risks to individuals;

b.  Placed an unsafe product into the stream of commerce;

c.  Aggressively over-promoted and marketed the subject food processors through television, social media, and other advertising outlets; and

d.  Were otherwise careless or negligent.

43.   Even though Defendant knew or should have known of the aforementioned defects, Defendant continued to market (and continue to do so) its Ninja Express Chop food processors to the general public.

**WHEREFORE,** Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.  Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

PLAINTIFF, FOR A THIRD CAUSE OF ACTION AGAINST SHARKNINJA OPERATING, LLC., ALLEGES AS FOLLOWS:

44.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

45.   At the time Defendant SharkNinja marketed, distributed, and sold its Ninja Express Chops to Plaintiff and/or her family in this case, Defendant warranted that its Ninja Express Chops were merchantable and fit for the ordinary purposes for which they were intended.

46.   Members of the consuming public, including consumers such as Plaintiff and/or her family, were intended third-party beneficiaries of the warranty.

47.   Plaintiff and her family reasonably relied on Defendant's representations that its food processors were a quick, effective, and safe means

**COMPLAINT AND DEMAND FOR JURY TRIAL**

of chopping and dicing ingredients.

48.   Defendant's Ninja Express Chop food processors were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

49.   Plaintiff used her Ninja Express Chop with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of chopping and dicing.

50.   Defendant's breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injuries and damages.

51.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

**WHEREFORE,** Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.   Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered**.**

**FOURTH CAUSE OF ACTION**

**<u>BREACH OF IMPLIED WARRANTY OF</u>**

**<u>FITNESS FOR A PARTICULAR PURPOSE</u>**

PLAINTIFF, FOR A FOURTH CAUSE OF ACTION AGAINST SHARKNINJA OPERATING, LLC., ALLEGES AS FOLLOWS:

52.   Defendant SharkNinja manufactured, supplied, and sold its Ninja Express Chop food processors with an implied warranty that they were fit for the particular purpose of chopping, dicing, and processing foods quickly, efficiently, and safely.

53.   Members of the consuming public, including consumers such as Plaintiff and her family, were the intended third-party beneficiaries of the

warranty.

54.     Defendant's Ninja Express Chop food processors were not fit for the particular purpose as a safe and efficient means of chopping, dicing, and processing foods due to the unreasonable risks of bodily injury associated with their use.

55.     Plaintiff and her family reasonably relied on Defendant's representations that its Ninja Express Chops were a quick, effective and safe means of chopping and dicing.

56.     Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

## INJURIES & DAMAGES

57.     As a direct and proximate result of Defendant's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident on or about August 22, 2022. Plaintiff is entitled to recover damages from Defendant for these injuries in an amount which shall be proven at trial.

58.     As a direct and proximate result of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant in an amount to be proven at trial.

59.     As a direct and proximate cause of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the severe laceration she suffered as a result of the incident. Plaintiff is

entitled to recover damages from Defendant for her past, present and future medical and other expenses in an amount which shall be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for her injuries and suffering sustained because of the use of the Defendant's defective food processor;

D. That all costs be taxed against Defendant;

E. That prejudgment interest be awarded according to proof;

F.  That Plaintiff be awarded attorney's fees to the extent permissible under Federal and California law; and

///

///

///

///

///

///

13
**COMPLAINT AND DEMAND FOR JURY TRIAL**

G. That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

**HARLAN LAW, P.C**

Dated: August 5, 2024

*/s/ Jordon Harlan, Esq*.
Jordon Harlan, Esq. (CA #273978).
122 43rd Street
Manhattan Beach, CA 90266
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

*In association with*:

.

**JOHNSON BECKER, PLLC**

Adam J. Kress (MN#0397289)
*Pro Hac Vice to be filed*
Anna Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com
arick@johnsonbecker.com

14
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims asserted in this Complaint so triable.

Dated: **August 5, 2024**               By:     */s/ Jordon Harlan, Esq.*

**Jordon Harlan, Esq. (CA #273978)**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1

**COMPLAINT AND DEMAND FOR JURY TRIAL**